UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALAN STEIN, KAREN STEIN,

                Plaintiffs,

vs.                          Case No.  2:07-cv-71-FtM-29DNF

PARADIGM MIRSOL, LLC,

                Defendant.

_____

### OPINION AND ORDER

      This matter comes before the Court on the parties' cross-motions for summary judgment (Docs. #10, #33).  The parties subsequently filed responses in opposition, affidavits, a reply, and supplemental authority. (Docs. ##14, 15, 19, 21, 26, 32, 35.)

      The parties agreed in the Joint Pre-Trial Statement that there are no disputed issues of fact.  (Doc. #38, p. 3.)  At issue is whether defendant was required to comply with the reporting and disclosure requirements of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 et seq. (ILSFDA).

### I.

      The agreed facts are as follows: On or about March 9, 2005, plaintiffs Alan Stein and Karen Stein (the Steins or plaintiffs) entered into an Agreement for Purchase and Sale of Real Estate (Doc. #1-2) with defendant Paradigm Mirasol, LLC (Paradigm or

defendant) for the purchase of a condominium described as Unit 507, Mirasol I, at Miromar Lakes. On or about April 1, 2005, an addendum was added, and on or about May 18, 2006, a second addendum was added. These documents collectively are referred to as the "Agreement." Pursuant to the Agreement, the Steins paid Paradigm $179,180 in deposits and $26,190 for optional upgrades requested by the Steins. As allowed in the Agreement, $89,590 of this money is being held in escrow by Miromar Title Company; $89,590 of the money was used in the construction of the condominium; and $26,190 of the money was used in purchasing and installing the requested upgrades. In the Second Addendum to the Agreement the Steins agreed that the $26,190 for upgrades was non-refundable and would not be returned for any reason.

On January 16, 2007, the Steins provided written notice to Paradigm that they were terminating the Agreement and demanding the return of their deposits. The Steins asserted that termination was permissible and the return of the deposits was required because Paradigm had not complied with the ILSFDA.

Construction of the condominium was completed within two years of the date of the Agreement. A Certificate of Occupancy was issued on February 7, 2007, and Paradigm provided the Steins with notice of the issuance of the Certificate of Occupancy on February 8, 2007. Paradigm was ready, willing and able to close on the condominium after February 7, 2007, and attempted to schedule a

-2-

closing date for February 20, 2007.  The Steins did not close on
the condominium.

**II.**

Plaintiffs filed a two-count Complaint (Doc. #1).  Count One
alleges that defendant violated the ILSFDA; Count Two alleges a
state law claim of conversion for failing to return the deposits.
Defendant filed a Counterclaim (Doc. #13) alleging breach of
contract for failing to close on the Agreement after issuance of
the Certificate of Occupancy.

Paradigm agrees that it did not provide the Steins with a
Property Report that met the requirements of 15 U.S. C. § 1707, but
asserts that the sale of the condominium was exempt from the
provisions of the ILSFDA.  The parties agree that if the Agreement
is <u>not</u> exempt from the reporting and registration requirements of
the ILSFDA, (1) the Steins were entitled to terminate the Agreement
on January 16, 2007; and (2) the Steins are entitled to a return of
the deposits in the amount of $179,180 (the parties dispute whether
the $26,190 for upgrades should be returned).  The parties further
agree that if the Agreement <u>is</u> exempt from the reporting and
registration requirements of ILSFDA, (1) Paradigm has not breached
the Agreement, (2) the Steins' failure to close on the condominium
is a breach of the Agreement, and (3) Paradigm is entitled to
retain the deposits in the amount of $179,180 as liquidated
damages, plus the $26,190 as agreed damages for the upgrades.

**III.**

The ILSFDA is an anti-fraud statute that uses disclosure as its primary tool to protect purchasers from unscrupulous sales of undeveloped home sites.  Winter v. Hollingsworth Props., Inc., 777 F.2d 1444, 1446-47 (11th Cir. 1985).  Section 1703(a) makes it unlawful to sell "any lot not exempt under section 1702" unless the seller complies with the provisions of the ILSFDA, including disclosure of a Property Report prior to the purchaser signing a contract.  Selling a condominium unit falls within the definition of selling a "lot" within the meaning of the ILSFDA.  Winter, 777 F.2d at 1449.  The sale of a condominium will be exempt from the ILSFDA, however, if the sale is "under a contract obligating the seller . . . to erect [a condominium] thereon within a period of two years."  Section 1702(a)(2).[1]  The parties dispute whether the Agreement constitutes a contract "obligating" the seller to erect a condominium on the lot within two years.[2]

_____

[1]15 U.S.C. § 1702(a)(2) provides:
Unless the method of disposition is adopted for the purpose of evasion of this chapter, the provisions of this chapter shall not apply to--
. . .
(2) the sale or lease of any improved land on which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years.

[2]The parties do not dispute that defendant did in fact erect the condominium within the two year period.  The dispute is whether the Agreement obligated defendant to do so.

The interpretation of a federal statute, particularly a statute with nationwide application, is governed by federal law. See, e.g., In re Prudential of Fla. Leasing, Inc., 478 F.3d 1291, 1298 (11th Cir. 2007); Reed v. Heil Co., 206 F.3d 1055, 1059 (11th Cir. 2000). Additionally, state law governing contract interpretation and enforcement will impact whether a given contract "obligates" the seller to build the condominium. While the Court looks to Florida law as to the effect of the Agreement, state law does not control the interpretation of the ILSFDA. Harvey v. Lake Buena Vista Resort, LLC, 6:07-cv-1641-Orl-DAB, 2008 WL 254131, *3 n.2 (M.D. Fla. 2008).

While the ILSFDA defines some terms, 15 U.S.C. § 1701, and regulations under the statute define other terms, 24 C.F.R. § 1710.1 (2007), neither defines "obligating" or "obligates." In 1979 the Secretary published an interpretive rule entitled "Guidelines for Exemptions Available Under the Interstate Land Sales Full Disclosure Act," 44 Fed. Reg. 24010 (1979). This was superceded by another version in 1984, 49 Fed. Reg. 31375 (1984), but this was removed on March 27, 1996, as part of a streamlining process. 61 Fed. Reg. 13596 (1996). The information was moved to the HUD website, where it is now available as "Supplemental Information to Part 1710: Guidelines for Exemptions Available Under the Interstate Land Sales Full Disclosure Act." www.hud.gov/offices/hsg/sfh/ils/ilsexemp.cfm.

The Guidelines state that it is intended to clarify HUD polices and positions with regard to the statutory exemptions, and that it is an interpretive rule and not a substantive regulation. 61 Fed. Reg. 13596, 13601 (1996). As an interpretive agency rule, the Guidelines are entitled to some deference. Reno v. Koray, 515 U.S. 50, 59 (1995). In pertinent part, these Guidelines now provide:

> HUD's interpretation of what constitutes an obligation to construct a building relies on general principles of contract law. Provisions for . . . remedies clauses are matters to be decided by the parties to the contract under the laws of the jurisdiction in which the construction project is located. However, such clauses may not alter the obligation of the seller to build. . . .
>
> The contract must not allow nonperformance by the seller at the seller's discretion. Contracts that permit the seller to breach virtually at will are viewed as unenforceable because the construction obligation is not an obligation in reality. Thus, for example, a clause that provides for a refund of the buyer's deposit if the seller is unable to close for reasons normally within the seller's control is not acceptable for use under this exemption. Similarly, contracts that directly or indirectly waive the buyer's right to specific performance are treated as lacking a realistic obligation to construct. HUD's position is not that a right to specific performance of construction must be expressed in the contract, but that any such right that purchasers have must not be negated. For example, a contract that provides for a refund or a damage action as the buyer's sole remedy would not be acceptable.
>
> Contract provisions which allow for nonperformance or for delays of construction completion beyond the two-year period are acceptable if such provisions are legally recognized as defenses to contract actions in the jurisdiction where the building is being erected. For example, provisions to allow time extensions for events or occurrences such as acts of God, casualty losses or material shortages are generally permissible. . . .
>
> Although the factual circumstances upon which nonperformance of a delay in performance is based may

-6-

vary from transaction to transaction, as a general rule delay or nonperformance must be based on grounds cognizable in contract law such as impossibility or frustration and on events which are beyond the seller's reasonable control.

The Court concludes that a contract "obligates" the completion of a condominium within two years when that commitment to do so is real and not illusory.  Another court has referred to this concept as a time commitment that "unequivocally requires" timely construction, or as a "true obligation" or an "unwavering obligation."  Fortunato v. Windjammer Homebuilders, Inc., 8:04-cv-165-T-26MSS, 2006 WL 208777, *3 (M.D. Fla. 2006)(J. Lazzara).  To "obligate" the timely completion does not require that the contract be unconditional, so long as the condition(s) does not render the apparent obligation illusory.  A two-year completion provision is not required to be an unconditional guarantee which imposes strict liability for noncompliance.  Atteberry v. Maumelle Co., 60 F.3d 415, 420 (8th Cir. 1995)("It is immediately apparent that while these guidelines say that the seller's obligation to build must be specific, they do not say, or even hint, that the obligation must be unconditional.  Neither, of course, does the statute.")  Such a strict liability for completion is not necessary to prevent the fraud against which the ILSFDA was intended to guard.  The Court therefore rejects plaintiffs' argument that any condition on performance renders an agreement illusory.  (Doc. #10, pp. 2-3.)

Thus, the Court agrees only in part with statements in Samara Dev. Corp. v. Marlow, 556 So. 2d 1097 (Fla. 1990).  The Court

-7-

agrees that the obligation to complete construction within two years must not be illusory.  Id. at 1099.  The Court also agrees with the specific holding of Samara - that a limited remedy of specific performance or return of deposits renders the contract illusory.  The Court does not agree, however, with *dicta* stating "[I]n order for the sale of a condominium in Florida to be exempt from the provisions of the [ILSFDA], the contract must unconditionally obligate the developer to complete construction within two years and must not limit the purchaser's remedies of specific performance or damages."  Id. at 1098. The idea that performance must be unconditional and that no limitations on remedies are acceptable was apparently influenced by language in the 1979 version of the Guidelines stating that "any conditions which qualify the obligation to complete a building within two years nullify the applicability of the exception."  44 Fed. Reg. 24,010, 24,012 (1979).  While Samara quoted this language, 556 So. 2d at 1099, it failed to note the next paragraph of those Guidelines, which stated: "However, contract provisions which provide for delays of construction completion dates beyond the two-year period are acceptable if such delays are legally supportable in the jurisdiction where the building is being erected as an impossibility of performance for reasons beyond the control of the developer.  Provisions to allow time extensions for such things as acts of God or material shortages are generally permissible."

**IV.**

The issue becomes whether the Agreement has a real obligation to complete the condominium within two years, or whether its other provisions render that apparent obligation illusory.  Two areas of the Agreement are pertinent: The provision which excludes certain delays from the two year period, and the limitations on the damages available to the buyers.

**A.**

The Agreement makes time of the essence, providing that "[t]ime is of the essence to this Agreement and specifically each and every paragraph, without limitation, in which a time period is involved."  (<u>Id.</u> at p. 6.)  The Agreement then excludes certain delays from the two year time of completion:

> Construction of the condominium unit will be complete and ready for possession within two (2) years from the execution of this Purchase Agreement in compliance with the Interstate Land Sales Full Disclosure Act; provided, however, that Seller shall not be responsible for any delay caused by acts of God, weather conditions, restrictions imposed by any governmental agency, labor strikes, material shortages or other delays beyond the control of the Seller and the completion and occupancy date shall be extended accordingly.

(Doc. #1-2, p. 7.)  Plaintiffs argue that the "provided, however" language following the two year requirement results in a contract which does not actually obligate Paradigm to complete the condominium within two years.  (Doc. #10, p. 3.)  Defendant responds that a *force majeure* clause is permitted under Florida law

-9-

and does not undermine the obligation to complete the condominium within two years.  (Doc. #14, pp. 5-12.)

The Court rejects defendant's argument that because a *force majeure* clause is lawful in Florida such a clause does not take a contract outside the scope of the exemption.  (Doc. #14, pp. 6-7.) The issue is not whether such clauses are lawful in Florida; they generally are.  The issue is whether this enforceable clause so undermines the two-year requirement that it renders the provision illusory or not a real obligation.

The provision in the Agreement provides that the two year period is extended "for any delay caused by acts of God, weather conditions, restrictions imposed by any governmental agency, labor strikes, material shortages or other delays beyond the control of the Seller. . . ."  Not all of these delay exclusions render the completion time illusory.  For example, delay for acts of God has a well established and limited definition that does not render the Agreement illusory.[3]  The other exclusions, however, are broad enough to seriously undermine the obligation to complete the condominium within two years.  This provision does not limit the permissible delays to those justifiable under an impossibility of

---

[3]Florida Power Corp. v. City of Tallahassee, 18 So. 2d 671, 675 (Fla. 1944)("An act of God, such as will excuse nonperformance of a legal contract, must be an act or occurrence so extraordinary and unprecedented that human foresight could not foresee or guard against it, and the effect of which could not be prevented or avoided by the exercise of reasonable prudence, diligence, and care or by the use of those means which the situation of the party renders it reasonable that he should employ.").

performance[4], but allows exclusions for far less compelling reasons, culminating in the catchall "other delays beyond the control of the Seller."  Thus, this clause is unlike those in the two cases cited by defendant which arguably found similar clauses permissible.  In Hardwick Props., Inc. v. Newbern, 711 So. 2d 35 (Fla. 1st DCA 1998), review denied, 727 So. 2d 908 (Fla. 1998), the provision required that all excusable delays must qualify under impossibility principles.  Similarly, the provision in Schatz v. Jockey Club Phase III, Ltd., 604 F. Supp. 537, 541 (S.D. Fla. 1985) required that the delay caused by conditions beyond the control of the seller be "legally supportable under Florida law as impossible of performance."

In the Agreement in this case, none of the exclusions are required to satisfy impossibility standards, and the catchall "other delays beyond the control of the Seller" is certainly broad enough to allow the Seller to excuse completion on a wide variety of events.[5]  The Court concludes that the provision in the

---

[4]Impossibility of performance is employed with great caution, and if knowledge of the facts making performance impossible was available to the promisor or was foreseeable, the promisor cannot invoke them as a defense to nonperformance.  American Aviation, Inc. v. Aero-Flight Serv., Inc., 712 So. 2d 809, 810 (Fla. 4th DCA 1998); Cook v. Deltona Corp., 753 F.2d 1552, 1558 (11th Cir. 1985).

[5]For example, excessive rain has been found to be a condition beyond a developer's control excusing timely performance, Devco Dev. Corp. v. Hooker Homes, Inc., 518 So. 2d 922 (Fla. 2d DCA 1987), as has a heart attack of the president of the developer-corporation, Camacho Enters., Inc. v. Better Constr., Inc., 343 So. 2d 1296 (Fla. 3d DCA 1977).

Agreement extending the completion period for delays not qualifying under Florida's impossibility of performance principles renders the obligation to complete the condominium within two years illusory. Therefore the Agreement is not exempt from the ILSFDA because it does not "obligate" completion of the condominium within two years.

**B.**

Plaintiffs also argue that the limitation to direct and actual damages renders the two year commitment in the Agreement illusory. (Doc. #10, pp. 3-4.)   Under the "Default" section, the Agreement provided:

> If Seller should default in the performance of any of the obligations to be performed by Seller pursuant to this Agreement, Buyer shall notify Seller of such default, and Seller will have ten (10) days after receipt of said notice within which to fulfill Seller's obligations. If, for any reason other than Seller's failure to make Seller's title marketable, Seller fails to perform this Agreement and Buyer is not in default of this Agreement, Buyer may seek specific performance or elect to terminate this Agreement by written notice to Seller, in which event the deposit shall be returned to Buyer upon demand, with any interest accrued thereon, and Buyer may commence an action to recover only actual and direct damages (out-of-pocket amounts actually paid by Buyer to third parties). Under no circumstances may Buyer seek or be entitled to recover any special, consequential, punitive, speculative or indirect damages, all of which Buyer specifically waives, from Seller for any breach by Seller of its obligation under this Agreement or any representation, warranty or covenant of Seller hereunder.

(Id. at p. 6, emphasis added.)   The Agreement thus allows the buyers to seek specific performance, or elect to terminate the Agreement and obtain their deposit with any accrued interest, or to seek actual and direct (out of pocket) damages, but not special,

-12-

consequential, punitive, speculative, or indirect damages.  Such a waiver provision is valid in Florida.  <u>Ament v. One Las Olas, Ltd.</u>, 898 So. 2d 147, 150-51 (Fla. 4th DCA 2005).

The Court rejects plaintiffs' argument that <u>any</u> limitation on a right to seek damages renders the Agreement illusory.  The limitation against speculative damages does not render the two-year completion requirement illusory because speculative damages are not recoverable.  <u>AR Holland Inc. v. Wendco Corp</u>, 884 So. 2d 1006 (Fla. 1st DCA 2004).  The limitation against punitive damages does not render the two-year completion requirement illusory because punitive damages are not recoverable for mere breach of contract.  <u>Ferguson Transp., Inc. v. North Am. Van Lines, Inc.</u>, 687 So. 2d 821 (Fla. 1996).

The restriction on special damages is a different matter. "Special damages" "are damages that do not follow by implication of law merely upon proof of the breach."  <u>Land Title of Cent. Fla., LLC v. Jimenez</u>, 946 So. 2d 90, 93 (Fla. 5th DCA 2006).  Special damages can have particular importance in real estate matters in Florida, since Florida's real estate market has long been subject to fluctuations which makes the prediction of losses difficult if not impossible.  <u>Hutchison v. Tompkins</u>, 259 So. 2d 129, 132 (Fla. 1972).  Thus in Florida one of the available types of special damages where the seller breaches a residential sales contract is "benefit of the bargain" damages for any increase between the purchase price and the fair market value after seller's breach.

Coppola Enters., Inc. v. Alfone, 531 So. 2d 334 (Fla. 1988);
Seaside Community Dev. Corp. v. Edwards, 573 So. 2d 142 (Fla. 1st
DCA 1991).  Thus, precluding a buyer from seeking special damages
can greatly impact the amount of damages available to a buyer, at
least in certain cycles of Florida's real estate market.  The Court
concludes that precluding the availability of such special damages
in all situations so undermines the remedy as to render the
Agreement illusory under the ILSFDA.

The Court takes a different approach than did Hardwick Props.,
Inc. v. Newbern, 711 So. 2d 35 (Fla. 1st DCA 1998), review denied,
727 So. 2d 908 (Fla. 1998).  In that decision the Florida Court of
Appeals held that a provision which precluded special and
consequential damages did not necessarily render the contract
illusory, and remanded for factual findings by the trial court as
to the amount of general damages recoverable and whether those
damages were so insubstantial under the circumstances as to render
the obligation illusory.  The difficulty with this approach is that
identical contract provisions may be illusory at one point in time
in Contract A and not illusory months later in Contract B,
depending upon the facts existing at the time of breach.  For a
national program such as the ILSFDA, this is untenable.  Indeed,
such an interpretation would encourage the type of speculating by
developers the ILSFDA was intended to reduce, further undermining
any true obligation to construct the condominium within two years.

-14-

**V.**

Because the Agreement is not exempt from the ILSFDA reporting requirements and it is undisputed that Paradigm did not provide the required Property Report, the Court finds plaintiffs were entitled to terminate the Agreement on January 16, 2007, and are entitled to the return of the deposits in the amount of $179,180.00.  The parties dispute whether plaintiffs are entitled to the return of the $26,190.00 paid for option upgrades.  This is based on the Second Addendum to the Agreement in which the Steins agreed that the $26,190 for upgrades was non-refundable and would not be returned for any reason.  Where the contract is properly revoked, as here, and the condominium is in the same condition, as here, a purchaser is "entitled to all money paid by him or her under such contract or agreement."  15 U.S.C. § 1703(e).  <u>See also</u> <u>Engle Homes, Inc. v. Krasna</u>, 766 So. 2d 311, 313 (Fla. 4th DCA 2000). Additionally, since the Agreement is unlawful under the ILSFDA, the Second Addendum provision is not enforceable as contrary to public policy.  Plaintiffs are entitled to a refund of the $26,190.00.

**VI.**

As to the conversion count, plaintiffs assert that Paradigm's retention of the deposit and upgrade funds was done with malice and disregard for plaintiffs' rights because of their failure to comply with ILSFDA.  (Doc. #10, p. 5.)  Conversion is "an act of dominion wrongfully asserted over, and inconsistent with, another's

-15-

possessory rights in personal property." <u>Joseph v. Chanin</u>, 940 So. 2d 483, 486 (Fla. 4th DCA 2006)(citations omitted).   Money is subject to conversion.   <u>All Cargo Transp., Inc. v. Florida East Coast Ry. Co.</u>, 355 So. 2d 178, 179 (Fla. 3d DCA 1978).   In this case, the funds were used and kept in accordance with the Agreement to escrow the deposit, maintain the funds, and to otherwise apply the funds towards construction or upgrades.   The parties agree that plaintiffs are not entitled to damages under their theory of conversion.   (Doc. #38, ¶ 19.)   Damages are an element of a conversion claim, and without damages there can be no cause of action.   Therefore, judgment will be entered in favor of defendant as to Count II.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.   Plaintiffs' Motion for Summary Judgment (Doc. #10) is **GRANTED** as to Count I and the Court finds that defendant is not exempt from its reporting obligations under ILSFDA; and **GRANTED** as to the Counterclaim for Breach of Contract (Doc. #13, pp. 4-6).

2.   Defendant's Dispositive Motion for Summary Judgment (Doc. #33) is **GRANTED** as to Count II and is otherwise **DENIED.**

3.   The Clerk is directed to enter judgment in favor of plaintiffs and against defendant as follows:   Plaintiffs were entitled to terminate the Agreement on January 16, 2007, and are entitled to the return of $179,180.00 in deposits and $26,190.00

paid for option upgrades, including pre-judgment interest accrued thereon through February 7, 2008.  Judgment shall enter in favor of defendant as to Count II, and plaintiff shall take nothing.

4.   The Clerk is further directed to terminate all pending motions and remaining deadlines as moot, including the Final Pretrial Conference scheduled for Tuesday, February 19, 2008, and to close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this   7th   day of February, 2008.

JOHN E. STEELE
United States District Judge


Copies:
Counsel of record

-17-